**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-1113C
(Filed: May 23, 2016)

FILED
MAY 23 2016
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| STEVEN R. LISTWA, | \* |
| Plaintiff, | \* |
| v. | \* |
| THE UNITED STATES, | \* |
| Defendant. | \* |

Pro Se Plaintiff; RCFC 12(b)(1); Tucker Act; Statute of Limitations; Application to Proceed In Forma Pauperis

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Steven R. Listwa, Philadelphia, PA, pro se.

Alison S. Vicks, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is plaintiff's pro se complaint, in which he alleges that he was unlawfully discharged from the United States Army ("Army") in 1966. Plaintiff seeks to proceed in forma pauperis ("IFP") and he seeks a referral to the "Pro Bono/Attorney Referral Pilot Program." Defendant moves to dismiss the complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the court grants the plaintiff's IFP motion, denies his motion for referral, and grants defendant's motion to dismiss.

### I. BACKGROUND

#### A. Factual Background

On November 10, 1965, plaintiff completed a pre-enlistment medical examination for the Army. Def.'s Mot., Ex. 1 at 000031. Plaintiff's vision was found to be within normal limits and he was allowed to enter active duty, which he did on January 3, 1966. Id. As a result of the examination, it was noted that he had a history of eye injury and had undergone eye surgery. Id.

On January 7, 1996, plaintiff's eyesight was again examined, this time at the Eye Clinic at Walson Army Hospital at Fort Dix, New Jersey. Id. at 000031-32. This examination revealed abnormalities of the retina. Id. The examining physician therefore concluded that plaintiff was "unfit for induction into the Army" but was "fit for retention." Id. at 000033. The physician

therefore recommended that plaintiff "meet a Medical Evaluation Board and [be separated] from the service." Id.

On January 13, 1966, pursuant to the dictates of a medical board, plaintiff was placed on medical hold. Id. at 000031. While on medical hold, plaintiff developed symptoms of a viral respiratory infection. Id. Plaintiff remained on medical hold until March 29, 1966. Id. Notes from plaintiff's medical records, dated January 19, 1966 and February 25, 1966, reflect that plaintiff "had only minor or no symptoms." Id.

On February 10, 1966, plaintiff requested his own discharge from the Army: "Request that I be discharged from the service UP AR 635-205. I have had eye trouble since 1958, estimated at 20/400 and 20/200 both eyes with glasses. Doctor at Optometry Clinic, Walson Army Hospital said my eyes are not acceptable for service in the U.S. Army." Id. at 000040-41. Plaintiff was separated from the service on April 5, 1966. Id. at 000040.

In August 1980, plaintiff applied to the Army Board for Correction of Military Records ("ABCMR") to have his records changed to reflect that he was not discharged voluntarily but rather as a result of a permanent physical disability. Id. at 000041; 67-69. Prior to the ABCMR's making a decision on plaintiff's August 1980 application, plaintiff requested, on May 8, 1981, that the application be closed so that he could apply to the Navy. Id.; see also id. at 000057, 000060.

On October 14, 2003, plaintiff again petitioned the ABCMR to have his medical records corrected to reflect that the reason for his discharge was a permanent physical disability. Id. at 000040. The ABCMR denied his application on September 1, 2004, noting that plaintiff was "discharged at his own request because of a medical condition of long standing" and that "[t]he character of the discharge [was] commensurate with the reason for the discharge." Id. at 000037, 000041.

## B. Procedural Background

Following the 2004 dismissal of his claim by the ABCMR, plaintiff began filing a series of federal lawsuits. On October 7, 2009, plaintiff filed his first suit in this court. See Listwa v. United States, No. 09-676C. On February 23, 2010, the undersigned granted plaintiff's motion to voluntarily dismiss the case. Id. Before the case was dismissed, on January 13, 2010, plaintiff filed a second suit in this court. See Listwa v. United States, No. 10-27C. One month later, on February 23, 2010, the undersigned again granted plaintiff's motion to voluntarily dismiss the case. Id. Plaintiff's third suit in this court was filed shortly thereafter, on April 15, 2010. See Listwa v. United States, No. 10-241C. And for a third time, the undersigned granted, on July 27, 2010, plaintiff's motion to voluntarily dismiss the case. Id. Plaintiff filed his fourth suit in this court on January 19, 2012. See Listwa v. United States, No. 12-40C. Later that same year, on July 19, 2012, the Honorable Lawrence J. Block granted defendant's motion to dismiss the case for lack of jurisdiction. Id. Over three years passed before plaintiff filed, on October 2, 2015, his fifth suit in this court—the instant action. Five days later, plaintiff filed his sixth suit in this court. See Listwa v. United States, No. 15-1157C. Nine days later, on October 16, 2015, the Honorable Thomas C. Wheeler sua sponte dismissed plaintiff's sixth complaint on the ground

that it was substantially alike in all material respects to the fifth complaint—the instant action. Id.

In addition to the six suits filed in this court, on February 9, 2009, plaintiff filed a claim in the United States District Court for the Eastern District of Pennsylvania. See Listwa v. Dep't Veterans Affairs, No. 09-510. One year later, on February 8, 2010, the Honorable Jan E. Dubois granted plaintiff's motion to voluntarily dismiss the complaint. Id.

### C. The Instant Action

Plaintiff's first complaint in the case at bar was filed on October 2, 2015. That same day, he filed a motion to proceed in forma pauperis. On October 15, 2015, plaintiff filed a motion for a referral to the "Pro Bono/Attorney Referral Pilot Program." On October 16, 2015, the court directed the clerk to place the complaint and its accompanying exhibits under seal because they contained personally identifying information. The court also ordered plaintiff to refile his complaint, which he did on October 22, 2015. On October 21, 2015, plaintiff moved for a mini-trial and on October 22, 2015, plaintiff filed an amended complaint, which contained identical averments to the first complaint but included additional exhibits. On November 3, 2015, the court granted plaintiff's motion to withdraw the request for a mini-trial. On October 26, 2015, plaintiff sought leave to present a question to the court regarding the accrual date of his claims for statute of limitations purposes. The court did not accept the filing and on October 30, 2015, the court directed the clerk to return the submission to the plaintiff.

On November 25, 2015, defendant moved for an extension of time until January 7, 2016 to file its answer to the amended complaint, which was granted by the clerk that same day. On January 7, 2015, instead of filing its answer, defendant moved to dismiss the case. Plaintiff filed two responses to the motion—one on January 19, 2016 and one on January 20, 2016. Then, on January 21 and January 22, 2016, plaintiff filed notices concerning the date by which defendant's answer to the complaint was due. On February 2, 2016, defendant filed its reply in support of its motion to dismiss and a response to plaintiff's filings regarding the date the answer was due.

On February 5, 2016, plaintiff filed a motion to compel the production of documents. That same day, the court denied plaintiff's motion and noted that it was premature given the pending motion to dismiss. Three days later, plaintiff filed an unsolicited status report. On February 12, 2016, the court issued an order directing the clerk to return three documents to plaintiff on the ground that they were premature discovery requests. The court also precluded plaintiff from filing any additional documents without first obtaining the court's permission. Finally, on May 5, 2016, the court directed defendant to clarify for the court whether its motion to dismiss, which was filed January 7, 2016, was directed at the first complaint or whether defendant meant to reference plaintiff's amended complaint. On May 20, 2016, defendant filed its response to the court's order—indicating that it intended to reference plaintiff's amended complaint—and the court now proceeds with consideration of the merits of defendant's ripe motion to dismiss.

## II. DISCUSSION

### A. Standard of Review

The plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The plaintiff cannot rely solely on allegations in the complaint, but must bring forth relevant, adequate proof to establish jurisdiction. See McNutt, 298 U.S. at 189.

A party may move to dismiss a case for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). When considering such a motion, the court accepts as true all undisputed factual allegations made by the nonmoving party, and draws all reasonable inferences from those facts in the nonmoving party's favor. Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 190 (2013). Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). Thus, the parties, or the court sua sponte, may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006). Ultimately, if the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); see also RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. Analysis

### 1. The Tucker Act

The ability of the Court of Federal Claims to entertain suits against the United States is limited: "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States not sounding in tort that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491 (2012). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

The gravamen of plaintiff's amended complaint is that he was unlawfully discharged from the Army in 1966. Compl. ¶ 4. Specifically, plaintiff claims that his Request for Discharge, DA Form 1049 was forged. Id. ¶ 5. According to plaintiff, "[a]t no time did [he]

ever request a discharge or sign a Request for Discharge." Id. ¶ 9. Plaintiff further claims "that he should have received a medical Discharge with a Service Connected Disability." Id. at 3. Because plaintiff claims to have been unlawfully discharged from the Army and because he also seeks to have the reason for his discharge from the military changed to reflect that it was related to a disability, his suit can be viewed either as one for unlawful discharge or one for military disability pay.[1] "In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204." Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003). Claims for military disability pay are also governed by a money-mandating statute, found at 10 U.S.C. § 1201 (2012). See Fisher v. United States, 402 F.3d 1167, 1174-75 (Fed. Cir. 2005); Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005). Thus, under either scenario, plaintiff has identified two money-mandating statutes for purposes of the Tucker Act. Nevertheless, as discussed below, the court lacks subject matter jurisdiction over his claims.

### 2. Plaintiff's Claims Are Barred by the Statute Of Limitations

Under the Tucker Act, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (1966)); see also Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009) ("A claim first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action."). If a plaintiff does not file within the six-year period, he "loses all rights to sue for the loss of pay stemming from the challenged discharge." Martinez, 333 F.3d at 1304.

Unlawful discharge claims accrue at the time of the discharge. Id. at 1303; accord Bowen v. United States, 292 F.3d 1383, 1386 (Fed. Cir. 2002); Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990). Thus, if this case is viewed as one for unlawful discharge, the

---

[1] The United States Court of Federal Claims ("Court of Federal Claims") holds pleadings of a pro se plaintiff to less stringent standards than pleadings filed by litigants represented by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action somewhere displayed." Ruderer v. United States, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Although a pro se plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not . . . take a liberal view of that jurisdictional requirement and set a different rule for pro se litigants only."); Bernard v. United States, 59 Fed. Cl. 497, 499 (noting that pro se plaintiffs are not excused from satisfying jurisdictional requirements), aff'd, 98 F. App'x 860 (Fed. Cir. 2004). As the Court of Federal Claims stated in Demes v. United States, 52 Fed. Cl. 365, 369 (2002), "[w]hile a court should be receptive to pro se plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate."

statute of limitations on plaintiff's claim began to run on April 5, 1966. Therefore, plaintiff had six years, or until April 5, 1972, to seek redress in this court. As a result of his failure to do so, the court is now precluded from considering his unlawful discharge claim as it is untimely under the Tucker Act's statute of limitations.

Disability retirement pay claims accrue on the date the appropriate military board has either acted or declined to act. Chambers, 417 F.3d at 1224; accord Friedman v. United States, 310 F.2d 381, 389 (1962); Furlong v. United States, 152 F. Supp. 238, 240-41 (1957). Thus, if this case is viewed as one for disability retirement pay, the statute of limitations on plaintiff's claim began to run on September 1, 2004, the date the ABCMR denied plaintiff's petition. Therefore, plaintiff had six years, or until September 1, 2010, to seek redress in this court. Again, as a result of his failure to file suit for disability retirement pay within the six-year period, as prescribed by the Tucker Act, he cannot do so now.[2]

### 3. Plaintiff's IFP Application Will Be Granted

Finally, as noted above, plaintiff filed, concurrent with his original complaint, an application to proceed in forma pauperis. Pursuant to section 1915 of title 28, courts of the United States are permitted to waive filing fees and security under certain circumstances. See 28 U.S.C. § 1915(a)(1); see also Hayes v. United States, 71 Fed. Cl. 366, 366–67 (2006) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees or give the security, and (3) states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Here, plaintiff has satisfied all three requirements. The court therefore grants plaintiff's application and waives his filing fee.

### III. CONCLUSION

As set forth above. Because plaintiff's claim for wrongful discharge is barred by the statute of limitations, the court **GRANTS** defendant's motion to dismiss and **DISMISSES** plaintiff's complaint for lack of jurisdiction pursuant to RCFC 12(b)(1). In addition, the court **GRANTS** plaintiff's IFP application and **DENIES** plaintiff's motion for a referral. Finally, the court declines defendant's invitation to determine, at this point in time, whether plaintiff is a vexatious litigant. The clerk is directed to enter judgment accordingly and shall not award costs.

**IT IS SO ORDERED.**

/s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge

---

[2] Although defendant also raises issue preclusion or collateral estoppel as a bar to plaintiff's claim, because the court concludes that plaintiff's claim is barred by the Tucker Act's six-year statute of limitations, it need not address that argument.